No. 25-1803

In the United States Court of Appeals
for the Sixth Circuit

———————

# United States of America,

Plaintiff-Appellant,

V.

# Edys Renan Membrano Diaz,

Defendant-Appellee.

———————

On Appeal from the United States District Court
for the Eastern District of Michigan
No. 25-cr-20164 (Hon. Judith E. Levy)

———————

## Brief for the United States

———————

<div style="margin-left:50%">

Jerome F. Gorgon Jr.
United States Attorney

Meghan Sweeney Bean
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-0214

</div>

# Table of Contents

Table of Authorities ........................................................................................ iv

Request for Oral Argument ......................................................................... vi

Jurisdictional Statement ............................................................................ vii

Introduction ...................................................................................................... 1

Issue Presented ................................................................................................ 3

Statement of the Case .................................................................................... 4

    A.    Membrano Diaz is removed from the United States six
        times. ........................................................................................... 4

    B.    Membrano Diaz enters the United States for the seventh
        time and, while here illegally, rapes a disabled American
        citizen. ........................................................................................ 4

    C.    Membrano Diaz pleads guilty to unlawful reentry after
        removal. ....................................................................................... 5

    D.    Membrano Diaz receives no prison time for his sixth
        unlawful reentry. ...................................................................... 6

Summary of the Argument ......................................................................... 12

Argument ......................................................................................................... 13

    The district court abused its discretion when it imposed a non-
    custodial sentence for a recidivist offender who raped a
    disabled woman after he unlawfully entered the United States
    for the seventh time. ............................................................................. 13

    A.    Membrano Diaz received a non-custodial sentence despite
        the district court's reference to "time served." ..................... 14

B.    The district court unreasonably discounted the serious nature of the offense and Membrano Diaz's disturbing history and characteristics. ................................................... 16

C.    A prison sentence is needed to promote respect for the law, afford adequate deterrence, and provide just punishment. . 22

D.    The district court created an unwarranted sentencing disparity ................................................................. 25

Conclusion ............................................................................ 27

Certificate of Service ............................................................ 28

Relevant District Court Documents ....................................... 29

# Table of Authorities

**Cases**

*Gall v. United States*, 552 U.S. 38 (2007) ................................................ 14

*Gilbert v. United States*, 64 F.4th 763 (6th Cir. 2023) ............................ 15

*United States v. Acosta-Rodriguez*, No. 24-cr-20418 (E.D. Mich.) ......... 19

*United States v. Avila-Ramirez*, No. 25-cr-20191 (E.D. Mich.) .............. 19

*United States v. Bass*, 17 F.4th 629 (6th Cir. 2021) ................................ 17

*United States v. Boucher*, 937 F.3d 702 (6th Cir. 2019) ....... 14, 17, 21, 27

*United States v. Herrera-Zuniga*, 571 F.3d 568 (6th Cir. 2009) ............. 14

*United States v. Lopez-Galvez*, 429 F. App'x 567 (6th Cir. 2011) ........... 17

*United States v. Macario-Ramirez*, No. 23-1180, 2024 WL 209179
        (6th Cir. Jan. 19, 2024) ................................................................ 23

*United States v. Martinez-Rendon*, 454 F. App'x 503
        (6th Cir. 2012) .............................................................................. 24

*United States v. Matute-Argueta*, 817 F. App'x 152 (6th Cir. 2020) ....... 19

*United States v. McKenzie*, 769 F. App'x 333 (6th Cir. 2019) ........... 18, 20

*United States v. Musgrave*, 761 F.3d 602 (6th Cir. 2014) ...................... 24

*United States v. Parrish*, 915 F.3d 1043 (6th Cir. 2019) ........................ 13

*United States v. Peppel*, 707 F.3d 627 (6th Cir. 2013) ...................... 17, 26

*United States v. Perez-Rodriguez*, 960 F.3d 748 (6th Cir. 2020) ...... 13, 18

*United States v. Porras-Chinchilla*, 459 F. App'x 553
        (6th Cir. 2012) .............................................................................. 20

*United States v. Ramadan*, No. 24-1167, 2024 WL 4144497 (6th Cir. Sept. 11, 2024) ............................................... 13

*United States v. Robinson*, 778 F.3d 515 (6th Cir. 2015)...... 13, 22, 23, 24

*United States v. Romero-Lopez*, No. 25-cr-20228 (E.D. Mich.) .............. 19

*United States v. Schrank*, 975 F.3d 534 (6th Cir. 2020) .................. 14, 22

*United States v. Tristan-Madrigal*, 601 F.3d 629 (6th Cir. 2010) .... 18, 20

*United States v. Turnley*, 627 F.3d 1032 (6th Cir. 2010) ........................ vii

*United States v. Ulloa-Garcia*, No. 25-cr-20275, (E.D. Mich.) ............... 19

*United States v. Watford*, 468 F.3d 891 (6th Cir. 2006) .......................... 13

*United States v. White*, 874 F.3d 490 (6th Cir. 2017) .................... 6, 9, 15

## Statutes

18 U.S.C. § 3231 ................................................................................. vii

18 U.S.C. § 3553 ............................................................................ 16, 22

18 U.S.C. § 3585(b) ......................................................................... 6, 15

18 U.S.C. § 3742(b) .............................................................................. vii

28 U.S.C. § 1291 ................................................................................... vii

8 U.S.C. § 1326(a) ......................................................................... 1, 3, 5

Mich. Comp. Laws § 750.520a ............................................................... 5

## Other Authorities

USSG § 2L1.2 ................................................................................. 7, 25

## Request for Oral Argument

Given the fact-intensive nature of this sentencing appeal and the infrequency of substantive-reasonableness challenges brought by the government, the Court may benefit from oral argument.

# Jurisdictional Statement

The district court had jurisdiction under 18 U.S.C. § 3231, because the case involves an "offense[] against the laws of the United States." This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to review a criminal sentence following entry of judgment.

The United States filed a timely notice of appeal. (R.24: Notice of Appeal, PageID.138). Pursuant to 18 U.S.C. § 3742(b) and this Court's caselaw, *see United States v. Turnley*, 627 F.3d 1032, 1038–39 (6th Cir. 2010), the United States has filed the written authorization of the Solicitor General for this appeal from a criminal sentence before filing this brief.

# Introduction

After illegally entering the United States for the seventh time, Edys Membrano Diaz raped and sodomized a woman with cerebral palsy and cognitive delays after pulling her into the laundry room of her Michigan apartment building and closing the door. He pleaded guilty in state court to three sex offenses and was sentenced to 6–15 years in prison.

Meanwhile, the United States charged him with unlawful reentry under 8 U.S.C. § 1326(a). Following his guilty plea, the district court imposed what amounted to a non-custodial sentence—a 24-month (100%) downward variance and lauded him as a future "ambassador for living up to our immigration restrictions."

That sentence was an abuse of discretion. It fails to account for the seriousness of the offense or Membrano Diaz's history and characteristics and undermines virtually every goal of sentencing. Among other problems, the district court fashioned its sentence on the misguided view that living and working in the United States illegally is commendable and that committing a rape while here illegally was not an aggravating circumstance. A non-custodial sentence also creates an

unwarranted disparity relative to the 19-month national average for similar offenders. The sentence should be vacated.

## Issue Presented

Did the district court abuse its discretion when it imposed a non-custodial sentence—a 24-month (100%) downward variance—for a defendant who was convicted of three sex offenses for raping and sodomizing a woman with cerebral palsy and cognitive delays while illegally present in United States for the seventh time, in violation of 8 U.S.C. § 1326(a)?

## Statement of the Case

**A.      Membrano Diaz is removed from the United States six times.**

Border patrol agents first encountered Membrano Diaz, a native and citizen of Honduras, in February 2019 in California. (R.18: Am. PSR, 65, ¶ 9). Because he had entered the country illegally, Membrano Diaz was arrested, served with an expedited order of removal, and removed to Honduras. (*Id.*).

Undeterred, Membrano Diaz reentered the United States five more times in a span of less than two and a half years. (*Id.*, 66, 69, ¶¶ 10–15, 35–40). Border patrol agents picked him up in California in August 2020, October 2020, and February 2021. (*Id.*). In June 2021, they picked him up in Texas. (*Id.*). And in July 2021, agents found him in New Mexico. (*Id.*). Each time, Membrano Diaz was removed from the country the same day. (*Id.*).

**B.      Membrano Diaz enters the United States for the seventh time and, while here illegally, rapes a disabled American citizen.**

In July 2022, only a year after his last removal, Membrano Diaz raped and sodomized a disabled woman at an apartment building in Michigan. (*Id.*, 68, ¶ 32). The victim, who had cerebral palsy and cognitive delays, reported that Membrano Diaz grabbed her as she was

walking past the laundry room, pulled her inside, and closed the door. (*Id.*). He then grabbed her breasts from behind, pulled down her underwear, and inserted his penis in her anus and his fingers into her vagina. (*Id.*). He injured her during the assault and caused her vaginal bleeding. (*Id.*).

Membrano Diaz pleaded guilty in state court to three sex offenses. (*Id.*). At his plea hearing, he admitted that he used force or coercion to commit the rape and knew that the victim was "mentally incapable" of consenting. (*Id.*; R.20: Gov. Sent. Memo, 84); *see also* Mich. Comp. Laws § 750.520a (defining "mentally incapable" as "suffer[ing] from a mental disease or defect that renders that person temporarily or permanently incapable of appraising the nature of his or her conduct"). The state court sentenced him to 6 to 15 years in prison and required him to register as a sex offender. (R.18: Am. PSR, 68, 75, ¶¶ 32, 80). He will be eligible for parole in July 2028. (*Id.*, 68, ¶ 32).

**C.      Membrano Diaz pleads guilty to unlawful reentry after removal.**

Meanwhile, ICE placed a detainer on Membrano Diaz. (*Id.*, 66, ¶ 15). In September 2024, the United States charged him with unlawful reentry, in violation of 8 U.S.C. § 1326(a). (R.1: Complaint, 1–4). In

March 2025, he was borrowed from state custody and brought to federal court on a writ of habeas corpus ad prosequendum, which meant that the state retained primary custody of him. (R.18: Am. PSR, 65, 72, ¶¶ 2, 6, 62). He later pleaded guilty to a single-count information. (R.10: Information, 16–18). He elected to remain in a federal facility on a writ until he was sentenced on his unlawful-reentry conviction, but the state still maintained primary custody of him. *See* 18 U.S.C. § 3585(b); *United States v. White*, 874 F.3d 490, 506–07 (6th Cir. 2017).

### D.    Membrano Diaz receives no prison time for his sixth unlawful reentry.

In advance of sentencing, Membrano Diaz reported to the probation department that he is single, has no children, is in good health, and came to the United States to work in home repairs like painting. (R.18: Am. PSR, 70–72, ¶¶ 46–51, 57). He refused to provide the name of his employer, who illegally employed him. (*Id.*, 72, ¶ 57). According to Membrano Diaz, he planned to live in Honduras following his eventual seventh removal from the United States. His parents and siblings live in Honduras, are aware of his charge, and are allegedly willing to assist him following his eventual removal from the United States. (*Id.*, 70–71, ¶¶ 43–47). The presentence report does not mention

any history of abuse and notes that Membrano Diaz's father provided him with money. (*Id.*). Membrano Diaz told the probation department that he did "not have any concerns regarding his return to Honduras." (*Id.*, 70, ¶ 45).

Membrano Diaz's guideline range of 24 to 30 months was statutorily capped at 24 months. (*Id.*, 67, 72, ¶¶ 22, 61). For similarly-situated offenders—those whose primary guideline was USSG § 2L1.2 with the same offense level and criminal history category—the average sentence was 19 months in prison. (*Id.*, 76, ¶ 86 (determined based on 1,900 defendants over the last five years)). Finding no reason to depart from the guideline range, the probation department recommended a guideline sentence of 24 months. (*Id.*, 74–75, ¶¶ 74, 79–80, 85).

The government also asked for a 24-month, consecutive sentence. (R.20: Gov. Sent. Memo, 89; R.23: Sent. Tr., 128–29). It emphasized Membrano Diaz's history of flouting our country's immigration laws and his rape of a vulnerable victim while here illegally for the seventh time. (*Id.*; R.20: Gov. Sent. Memo, 86–89). The government advocated for a consecutive sentence to ensure that Membrano Diaz received just punishment for his immigration offense, which involved a distinct harm

that should not be "mixed in" with the sentence that he already received for the rape. (R.23: Sent. Tr., 129).

Membrano Diaz asked for a 19-month sentence, to run concurrent to his state sentence. (R.21: Membrano Diaz Sent. Memo, 92). He cited poverty and the desire to work as his reasons for repeatedly returning to the United States. (*Id.*, 96–98). For the first time, he claimed that his father abused him when he was young. (*Id.*, 94). Membrano Diaz stated that he was "ashamed" for raping a vulnerable victim when he "was drunk." (R.23: Sent. Tr., 129 (counsel), *id.*, 131 (Membrano Diaz); R.21: Membrano Diaz Sent. Memo, 100). He also now claimed—in direct contradiction to his admissions during his state plea hearing—that he did not know that the victim was cognitively impaired when he raped her. (*Id.*, 100; R.20: Gov. Sent. Memo, 84). Membrano Diaz said that he did not want to return to the United States because the consequences for yet another unlawful reentry offense would be steep. (R.21: Membrano Diaz Sent. Memo, 101; R.23: Sent. Tr., 130). According to Membrano Diaz, he would tell others back home in Honduras not to come here illegally "so they don't pay the consequences." (*Id.*, 131). His counsel mentioned that he had been in custody for five months,

apparently under the mistaken impression that the time would count toward his federal sentence, despite the fact that it was being credited to his state sentence. (*Id.*, 103; R.23: Sent. Tr., 129); *White*, 874 F.3d at 506–07.

The district court varied downward and sentenced him to "time served," to run concurrent to his undischarged state sentence. (R.23: Sent. Tr., 135; R.22: Judgment, 119). Beginning with the seriousness of the offense, the court was "thankful" that the crime here—unlawful reentry—"is not a violent crime." (R.23: Sent. Tr., 132). The court distinguished unlawful reentry from what it deemed more serious crimes like "stealing money from [government] programs." (*Id.*).

With respect to Membrano Diaz's history and characteristics, the court "commend[ed]" him for showing his "devotion" to his family by "working here in the United States in jobs that Americans apparently do not want to work in" for wages that it surmised were "undoubtedly abusive." (*Id.*, 133). The court found it understandable for Membrano Diaz to shield the name of his employer because hiring undocumented workers "is not lawful." (*Id.*, 127). It noted that Membrano Diaz grew up in poverty and lost two siblings to violence, and it referred to "scientific

research" showing that "when people are hungry, they simply can't make good choices." (*Id.*, 133). It also credited Membrano Diaz's new claim that his father abused him when he was young. (*Id.*). The court acknowledged that his sex offenses were "horrible," but it was satisfied that he had "taken responsibility," "expressed remorse for that," and received "a lengthy state sentence as punishment." (*Id.*, 132, 135).

Next, the district court said that it heard in Membrano Diaz's allocution "respect for the law." (*Id.*, 133). The court framed his illegal entries as "attempts to return to this country to work and to be productive and to support [his] family." (*Id.*). It took Membrano Diaz at his word that this seventh illegal entry was different—he would not return and would tell others not to come here illegally either. Thus, the court viewed him as "promoting respect for the law." (*Id.*, 134).

With respect to deterrence, the court said that it "usually" has "almost no hope that a prosecution of this nature will discourage other people" from illegally entering the United States. (*Id.*, 134). But again, based on Membrano Diaz's word, the court was "confident" that deterrence would "be achieved" here. (*Id.*). In fact, the court claimed

that he would be an "ambassador for living up to our immigration restrictions" when he returned to Honduras. (*Id.*).

Addressing the remaining factors, the court thought that Membrano Diaz could benefit from substance abuse treatment. (*Id.*). But since it decided not to sentence him to any federal time, it expressed its "prayer and hope" that Membrano Diaz could receive substance abuse treatment in state custody. (*Id.*). The court also stated that it "certainly strive[s]" to avoid unwarranted sentencing disparities, but at the same time views each criminal defendant "as an individual human being" and "not just as a data point on a chart." (*Id.*, 134–35).

The court then sentenced Membrano Diaz to "time served," ordered him to pay a mandatory special assessment of $100, and waived any fine. (*Id.*, 135). Before concluding, the court expressed its appreciation that Membrano Diaz had "taken responsibility for everything that has happened." (*Id.*, 136). It again "commend[ed]" him for "supporting [his] family during [his] time here in this country." (*Id.*). The court ended by offering its best wishes to Membrano Diaz in his "completion of [his] state sentence and [his] return to Honduras." (*Id.*).

The government timely appealed. (R.24: Notice of Appeal, 138).

## Summary of the Argument

It is rare for the government to appeal a sentence as substantively unreasonable, but doing so is warranted here. Despite six prior removals from the United States, Membrano Diaz returned and raped and sodomized a disabled American citizen. A non-custodial sentence here was an abuse of discretion.

Oddly, the district court spun Membrano Diaz's repeated illegal entries in his favor, commending his family devotion and willingness to perform work that it claimed Americans find undesirable. And it gave virtually no weight to his violent sex crimes. The court also failed to accomplish the basic aims of sentencing: to promote respect for the law, to afford deterrence, and to provide just punishment. Given Membrano Diaz's record, it was unreasonable to believe that his seventh illegal entry would be his last or to liken him to an "ambassador" for lawful immigration. The court's view that Membrano Diaz should not serve any time beyond his state sentence does not provide just punishment. And it did not justify the drastic sentencing disparity that it created.

Because Membrano Diaz's sentence is substantively unreasonable, this Court should vacate the judgment and remand for resentencing.

## Argument

**The district court abused its discretion when it imposed a non-custodial sentence for a recidivist offender who raped a disabled woman after he unlawfully entered the United States for the seventh time.**

This Court reviews the substantive reasonableness of a sentence, including the decision whether to impose a concurrent or consecutive sentence, for abuse of discretion. *See United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019); *United States v. Watford*, 468 F.3d 891, 915 (6th Cir. 2006). A sentence is substantively unreasonable "when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Robinson*, 778 F.3d 515, 519 (6th Cir. 2015).

Although a district court has discretion in sentencing, it is "not without limit." *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020). Appellate review can serve as an important check on that discretion, and the government has invoked it here. *See United States v. Ramadan*, No. 24-1167, 2024 WL 4144497, at *6–7 (6th Cir. Sept. 11, 2024) (Thapar, J., concurring) (expressing concern given the offense

conduct but noting that an appellate court cannot review a below-guideline sentence that the government does not appeal).

A district court abuses its discretion when it imposes a sentence that "is not proportionate to the seriousness of the circumstances of the offense and offender." *United States v. Schrank*, 975 F.3d 534, 536 (6th Cir. 2020) (cleaned up). This Court "take[s] into account the totality of the circumstances." *Gall v. United States*, 552 U.S. 38, 51 (2007). A below-guideline sentence, like that imposed here, is not presumed reasonable. *See United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009). Rather, this Court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance," in part because variances "risk creating unwarranted disparities among similarly situated defendants nationwide." *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir. 2019). If the district court fails to distinguish the circumstances from a "mine-run case," then "closer review may be in order." *Id.*

### A. Membrano Diaz received a non-custodial sentence despite the district court's reference to "time served."

When a defendant is held in federal custody on federal charges, he is entitled to receive credit against his federal sentence for the period of

pre-sentence detention. 18 U.S.C. § 3585(b)(1). A sentence of "time served" in those circumstances reflects the district court's view that the period of pre-sentence detention is itself a sufficient punishment. But that is not the case when the defendant remains in the "primary jurisdiction" of the state while serving a state sentence and is produced in federal court on a writ of habeas corpus ad prosequendum. *White*, 874 F.3d at 507; *Gilbert v. United States*, 64 F.4th 763, 771 (6th Cir. 2023). Then, the defendant cannot receive credit against his federal sentence for that period of prior detention, because it has already been credited against the state sentence. 18 U.S.C. § 3585(b) (permitting time-served credit if it "has not been credited against another sentence"). In that instance, a "time served" sentence entails no time in federal custody.

That's what happened here. Membrano Diaz was already serving his state sentence when he was borrowed from state custody and appeared in federal court on a writ. For the next five months—while awaiting the resolution of his federal case—he continued to receive credit against his state sentence. *See, e.g.*, *White*, 874 F.3d at 506–07. So although the district court said that it was imposing a time-served

sentence to run concurrently with his undischarged state term, as it stands, Membrano Diaz has not (and will not) serve any federal time.[1]

To be clear, even if the court had imposed a five-month custodial sentence in this case—either concurrent or consecutive—such a significant downward variance would still have been an abuse of discretion for the reasons discussed below. Therefore, for purposes of remand, the government maintains that the only reasonable outcome here is a consecutive, guideline sentence. But the question on appeal is whether imposing what amounted to a non-custodial sentence was an abuse of discretion. This Court should conclude that it was, vacate the sentence, and remand for resentencing.

**B.    The district court unreasonably discounted the serious nature of the offense and Membrano Diaz's disturbing history and characteristics.**

The district court's first misstep was giving "too little weight" to the serious nature of the offense and Membrano Diaz's troubling history and characteristics under 18 U.S.C. § 3553(a)(1). *See United States v.*

---

[1] The sentence was not only unreasonable, but also impossible. (R.22: Judgment, 119). Because a time-served sentence does not entail any prison time going forward, it cannot run concurrent to an undischarged state prison term.

*Bass*, 17 F.4th 629, 638 (6th Cir. 2021). A district court "must explain how a sentence comports with the level of seriousness of the crime committed." *United States v. Peppel*, 707 F.3d 627, 635 (6th Cir. 2013) (vacating seven-day sentence as substantively unreasonable). Speaking in "broad terms" about the seriousness of the offense is insufficient where the chosen sentence does not reflect the offense's gravity. *Id.* (faulting the court for merely "acknowledg[ing] the seriousness of the offense in broad terms" without "explain[ing] why the [defendant's sentence] was sufficient to reflect the seriousness of [his] crimes"). This includes where a court fails to account for harm to victims. *See Boucher*, 937 F.3d at 709–10.

Unlawful reentry is a serious crime, punishable by up to two years in prison, and Membrano Diaz has already been removed six times. Yet not one of his prior unlawful entries was assessed criminal history points to calculate his guideline range. (R.18: Am. PSR, 69, ¶¶ 35–40). Thus, Membrano Diaz's recidivism should have been an aggravating factor when the district court fashioned its sentence. *See, e.g.*, *United States v. Lopez-Galvez*, 429 F. App'x 567, 572 (6th Cir. 2011) (affirming upward variance to 24-month statutory maximum where defendant had

illegally reentered the United States four times); *United States v. Tristan-Madrigal*, 601 F.3d 629, 634 (6th Cir. 2010) (affirming upward variance to 36 months where defendant "had been removed from the United States on at least four occasions" and only one of those unauthorized reentries was reflected in his criminal history score); *United States v. McKenzie*, 769 F. App'x 333, 336 (6th Cir. 2019) (affirming upward variance to 72 months based, in part, on the fact that the defendant possessed a loaded, stolen firearm "after illegally reentering the United States"); *Perez-Rodriguez*, 960 F.3d at 755 (collecting cases "affirm[ing] upward variances in illegal reentry cases where the defendant not only demonstrated a pattern of returning to the country after deportation, but also committed crimes subsequent to removal and reentry that endanger the public").

Yet the court treated Membrano Diaz's prior unlawful entries—none of which were scored to calculate his guidelines—as a mitigating factor. It told him: "What I see in you is somebody who came to this country repeatedly so that you could help your family." (R.23: Sent. Tr., 132). It went on to applaud him for repeatedly entering the United States illegally, saying, "I commend you for supporting your family, for

expressing your devotion to them and for working here in the United States in jobs that Americans apparently do not want to work in." (*Id.*, 133).[2] It went so far as to apologize for what it guessed were the "undoubtedly abusive" wages that he was paid while here illegally. (*Id.*). It never asked Membrano Diaz if he paid taxes on those wages. Membrano Diaz's decisions to repeatedly flout our country's laws warranted a higher sentence, not a lower one. *See United States v. Matute-Argueta*, 817 F. App'x 152, 154 (6th Cir. 2020) (upholding an

---

[2] The district court has repeatedly used this inverted reasoning in recent unlawful reentry cases, and it often proceeds to sentencing without a presentence report. *See, e.g.*, *United States v. Romero-Lopez*, No. 25-cr-20228, R.24: Sent. Tr., 60–74 (E.D. Mich. June 10, 2025) (commending repeat drug offender who had been removed multiple times for returning to do work "that apparently American citizens do not wish to do" and imposing a time-served sentence without a presentence report); *United States v. Acosta-Rodriguez*, No. 24-cr-20418, R.26: Sent. Tr., 136–39 (E.D. Mich. Feb. 26, 2025) (imposing a time-served sentence for a repeat drug offender who had been removed eight times and viewing his repeated returns as an expression of "love" for the United States); *United States v. Avila-Ramirez*, No. 25-cr-20191, R.19: Sent Tr., 39–76 (E.D. Mich. May 7, 2025) (imposing a time-served sentence without waiting for a presentence to be prepared for an offender who had been removed four times); *United States v. Ulloa-Garcia*, No. 25-cr-20275, R.20: Sent. Tr., 40–75 (E.D. Mich. May 20, 2025) (imposing a time-served sentence without a presentence report for a defendant who had been removed three times and had a history of evading law enforcement and finding it "unclear" whether this case "contributes" to the enforcement of immigration law).

above-guideline sentence for a supervised release violation based on unlawful reentry by "an aggravated felon with a decades-long history of illegally entering and being removed from the country"); *United States v. Porras-Chinchilla*, 459 F. App'x 553, 558 (6th Cir. 2012) (affirming 54-month sentence for unlawful reentry based on the defendant's "criminal history," "recidivist tendencies," and "the need to deter him from illegally reentering the country yet another time").

And Membrano Diaz committed an unthinkable crime while here illegally—he raped and sodomized a disabled American citizen whom he knew lacked the capacity to consent. That conduct elevated the serious nature of his unlawful reentry offense and placed him in a category of defendants whose history and characteristics call for a harsher sentence. *See, e.g.*, *McKenzie*, 769 F. App'x at 336 (affirming above-guideline sentence based on seriousness of other criminal conduct committed while the defendant was in the country illegally); *Tristan-Madrigal*, 601 F.3d at 633–34 (affirming above-guideline sentence for unlawful reentry based, in part, on the defendant's drunk driving offenses committed while in the country illegally).

Although acknowledging that Membrano Diaz committed a "horrible" crime, the district court failed to give it appropriate weight. (R.23: Sent. Tr., 132 (narrowing its inquiry because the count of conviction "is not a violent crime")). The court did not discuss or consider the significant harm that Membrano Diaz caused to the woman he raped while in the United States illegally. *See Boucher*, 937 F.3d at 709–10 (vacating sentence as substantively unreasonable, in part, because the court's brief mention of the "seriousness of the harm" was insufficient to account for the significant injury to the victim).

Indeed, the district court's only commentary about the rape favored Membrano Diaz. It repeatedly commended him for "tak[ing] responsibility" and expressing remorse. (R.23: Sent. Tr., 132, 135, 136). It even relied on Membrano Diaz's alleged penitence to justify its decision to sentence him to time served. (*Id.*, 135 (imposing a time-served sentence "in light of," among other things, "the way [he] handled the state case and . . . stepp[ed] forward to take responsibility and to gain insight into what led [him] to commit that crime of sexual assault")). Efforts to minimize the rape because he was "drunk" hardly reflect an acceptance of responsibility. (*Id.*, 129 (counsel), *id.*, 131

(Membrano Diaz); R.21: Membrano Diaz Sent. Memo, 100). At bottom, Membrano Diaz should not have received a more favorable sentence because he had something appalling to regret. *See. Schrank*, 975 F.3d at 536 (vacating non-custodial sentence for possessing child pornography because the "ultimate sentence must reflect the severity of [the] depraved criminal conduct"); *Robinson*, 778 F.3d at 520 (vacating time-served sentence because it did not "adequately reflect" the seriousness of possessing child pornography).

In sum, the district court gave insufficient weight to the serious nature of the offense and Membrano Diaz's history and characteristics. As a result, it imposed a substantively unreasonable sentence.

## C. A prison sentence is needed to promote respect for the law, afford adequate deterrence, and provide just punishment.

A non-custodial sentence also fails to promote respect for the law, afford adequate deterrence, or provide just punishment. *See* 18 U.S.C. § 3553(a)(2). First, it defied logic for the district court to view a convicted rapist and registered sex offender who illegally entered this country for the seventh time as someone who was "promoting respect for the law." (R.23: Sent. Tr., 134). It is hard to understand why anyone would credit Membrano Diaz's statement that this time would be

different than the seven times before, and it is unreasonable to imagine someone with his record serving as an "ambassador for living up to our immigration restrictions." (*Id.*); *see United States v. Macario-Ramirez*, No. 23-1180, 2024 WL 209179, at *4 (6th Cir. Jan. 19, 2024) (affirming above-guideline sentence due to "the need for deterrence and respect for the law" based on the defendant's "criminal history and repeated reentry," which "outweighed" any "mitigating aspects of his history").

Furthermore, the non-custodial sentence does not afford adequate deterrence—either general or specific. As for general deterrence, the court essentially threw up its hands because it usually has "almost no hope that a prosecution of this nature will discourage other people" from coming into the country illegally. (R.23: Sent. Tr., 134); *see also* n.2 (providing examples of district court expressing skepticism about general deterrence in other unlawful reentry cases). A subjective belief that general deterrence is futile does not obviate the need to consider it. *See Robinson*, 778 F.3d at 521. And even taking Membrano Diaz at his word, it is unclear how he could dissuade others back home from coming here illegally because of the consequences, when he himself did not serve a single day of federal time. Far from deterring future illegal

immigration, the sentence here sends a message to undocumented individuals—even violent criminals— that repeatedly reentering this country will not be met with consequences. *See United States v. Musgrave*, 761 F.3d 602, 609 (6th Cir. 2014) (noting that the need for "general deterrence is particularly important" for substantial downward variances).

Relatedly, the court cannot ignore the goal of general deterrence based on its belief that a particular defendant has been specifically deterred. *See Robinson*, 778 F.3d at 521. And even if it could, any belief that Membrano Diaz has been deterred is unreasonable. Actions speak louder than words. Given Membrano Diaz's unrelenting violations of our immigration laws, there was a strong need for specific deterrence that was not afforded here. *See United States v. Martinez-Rendon*, 454 F. App'x 503, 508 (6th Cir. 2012) (affirming upward variance based on defendant's "persistence in driving while under the influence of alcohol, coupled with his repeated reentry into this country" because his conduct "evidences a lack of deterrence").

Perhaps most obviously, the sentence here fails to provide just punishment. Other than the $100 special assessment, Membrano Diaz

received no punishment at all for his federal offense. And any concurrent custodial term would be equally unreasonable, because a two-for-the-price-of-one sentence would still give him a free pass for his sixth unlawful reentry.

For all these reasons, a non-custodial sentence on this record is inadequate to serve the goals of sentencing, and the district court abused its discretion in concluding otherwise.

### D. The district court created an unwarranted sentencing disparity.

Finally, the 24-month (100%) downward variance here created an unwarranted sentencing disparity. As noted in the presentence report, over the last five years, there were over 1,900 defendants whose primary guideline was USSG § 2L1.2 and whose offense level and criminal history category were the same as Membrano Diaz. (R.18: Am. PSR, 76, ¶ 86). The average length of their sentences was 19 months. (*Id.*). Even Membrano Diaz thought that he deserved an average sentence, asking the court to sentence him to 19 months in federal custody, to run concurrent to his undischarged state sentence. (R.21: Diaz Sent. Memo, 92).

The district court said that it "strive[s]" to avoid sentencing disparities "in all cases," but its analysis contradicts that statement. (R.23: Sent. Tr., 134–35). It did not give compelling reasons—nor could it—for the 19-month disparity between Membrano Diaz's non-custodial sentence and the average 19-month sentence that similar offenders receive. Membrano Diaz is no different than most of those similar offenders who were almost certainly raised in poverty and admit to their wrongdoing when faced with unassailable proof of their unlawful reentry. And acceptance of responsibility was already accounted for when calculating the guidelines. (R.18: Am. PSR, 67, ¶¶ 28–29).

The unexplained nationwide sentencing disparity that the district court created was even more unwarranted given the aggravating circumstances of this unlawful reentry case, involving a seven-time recidivist and convicted rapist. This was not a "mine-run" case—it was much worse and warranted a higher-than-average sentence.

This unwarranted disparity is yet another way that the district court abused its discretion and imposed a substantively unreasonable sentence. *See Peppel*, 707 F.3d at 640 (vacating sentence as substantively unreasonable in part because "the district court failed to

offer an explanation as to how a seven-day sentence avoids national sentencing disparities, an omission of even greater import when imposing a sentence so decidedly below the guideline range"); *Boucher*, 937 F.3d at 708–09 (vacating sentence as substantively unreasonable in part because "the district court failed to address the risk of sentencing disparities," which "intensifies when the defendant receives a sentence well outside" the guidelines). For all these reasons, Membrano Diaz's non-custodial sentence should be vacated.

## Conclusion

This Court should vacate Membrano Diaz's sentence and remand for resentencing.

Respectfully submitted,

Jerome F. Gorgon Jr.
United States Attorney

/s/ Meghan S. Bean
Meghan Sweeney Bean
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-0214
Meghan.Bean@usdoj.gov

Dated: October 14, 2025

## Certificate of Service

I certify that on October 14, 2025, I caused this Brief for the United States to be electronically filed with the Clerk of the United States Court of Appeals for the Sixth Circuit using the ECF system, which will send notification of the filing to the following attorney of record:

Fabián Rentería Franco,
fabian_renteria_franco@fd.org

/s/ Meghan S. Bean
Assistant United States Attorney

# Relevant District Court Documents

The United States of America designates as relevant these documents in the district court's electronic record, Eastern District of Michigan case number 25-cr-20164:

| Record No. | Document Description | Page ID Range |
|---|---|---|
| 1 | Complaint | 1–4 |
| 10 | Information | 16–18 |
| 13 | Waiver of Indictment | 22–23 |
| 18 | Amended PSR (dated 7/9/2025) | 62–77 |
| 20 | Gov. Sentencing Memo | 82–90 |
| 21 | Membrano Diaz Sentencing Memo and Exs. | 91–117 |
| 22 | Judgment | 118–22 |
| 23 | Sentencing Transcript | 123–37 |
| 24 | Notice of Appeal | 138 |