UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

———

**No. 25-1803**

———

**United States of America,**

Plaintiff-Appellant,

v.

**Edys Renan Membrano Diaz,**

Defendant-Appellee.

———

Appeal from the United States District Court
for the Eastern District of Michigan

Hon. Judith E. Levy
No. 5:25-cr-20164

—————

**APPELLEE'S RESPONSE BRIEF**

—————

Fabián Rentería
Assistant Federal Defender
Counsel for Edys Renan Membreño Diaz
FEDERAL COMMUNITY DEFENDER
613 Abbott Street, Suite 500
Detroit, MI 48226
P: 313.463.6143
E: fabian_renteria_franco@fd.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ................................. 1

JURISDICTIONAL STATEMENT.................................................................. 2

STATEMENT OF ISSUES ............................................................................. 3

STATEMENT OF THE CASE ....................................................................... 4

   I.    Initiation of Case.................................................................... 4

   II.   Change of Plea Hearing and Presentence Report ............................ 5

   III.  Sentencing Memorandums.................................................... 8

   IV.  Sentencing ......................................................................... 14

SUMMARY OF THE ARGUMENT............................................................. 21

ARGUMENT................................................................................................ 23

   I.    Standard of Review............................................................. 23

   II.   Government counsel failed to meet its charge to clearly articulate an objection and identify any errors for the district court to correct "on the spot" regarding the imposed sentence...................................... 25

   III.  The district court acted within its discretion in weighing the sentencing factors.................................................................28

   IV.  The district court did address sentencing disparity........................ 37

CONCLUSION............................................................................................. 41

CERTIFICATE OF SERVICE...................................................................... 43

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ......... 44

# TABLE OF AUTHORITIES

**Cases**

*Gall v. United States*, 552 U.S. 38 (2007) ...................................... 23, 24, 39

*United States v. Adams*, 873 F.3d 512 (6th Cir. 2017) ............................... 23

*United States v. Axline*, 93 F.4th 1002 (6th Cir. 2024) ............................ 39

*United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004) ......................... 20, 26

*United States v. Boucher*, 937 F.3d 702 (6th Cir. 2019) ...................... 32, 33

*United States v. Erker*, F.4th 966 (6th Cir. 2025) ..................................... 39

*United States v. Frei*, 995 F.3d 561 (6th Cir. 2021) ................................. 40

*United States v. Hills*, 27 F.4th 1155 (6th Cir. 2022) ............................... 39

*United States v. Hymes*, 19 F.4th 928 (6th Cir. 2021) ............................... 39

*United States v. Jett*, 154 F.4th 459 (6th Cir. 2025) ........................... 25, 26

*United States v. Johnson*, 934 F.3d 498 (6th Cir. 2019) ........................... 40

*United States v. Lopez-Galvez*, 429 F. App'x 567 (6th Cir. 2011) .............. 30

*United States v. McKenzie*, 769 Fed. App'x 333 (6th Cir. 2007) ............... 30

*United States v. Perez-Rodriguez*, 960 F.3d 748 (6th Cir. 2020) . 24, 30, 31, 36

*United States v. Porras-Chinchilla*, 459 Fed. App'x 553 (6th Cir. 2012).... 31

*United States v. Poynter*, 495 F.3d 349 (6th Cir. 2007) ........................... 35

*United States v. Price*, 901 F.3d 746 (6th Cir. 2018) ............................... 23

*United States v. Rayyan*, 885 F.3d 436 (6th Cir. 2018) ....................... 23, 24

*United States v. Richardson*, 437 F.3d 550 (6th Cir. 2006) ...................... 40

*United States v. Thomas*, 933 F.3d 605 (6th Cir. 2019) ........................... 24

*United States v. Tristan-Madrigal*, 601 F.3d 629 (6th Cir. 2010) ............. 30

*United States v. Wells*, 473 F.3d 640 (6th Cir. 2007) ............................... 28

*United States v. Wilson*, 503 U.S. 329 (1992) ......................................... 28

**Statutes**

8 U.S.C. § 1326(a) .................................................................4, 5, 6, 31

8 U.S.C. § 1326(b) .......................................................................... 5

18 U.S.C. § 3553(a) ................................................................passim

18 U.S.C. § 3742 ............................................................................. 2

28 U.S.C. § 1291 ............................................................................. 2

**Other Authorities**

28 C.F.R. § 0.96 ............................................................................28

Circuit Rule 28(a)(1) ..................................................................... 2

U.S.S.G. § 2L1.2(a) ........................................................................ 7

U.S.S.G. § 2L1.2(b)(3)(A) .............................................................. 7

U.S.S.G. § 5G1.3(d) ..................................................................... 13

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Edys Renan Membreño Díaz[1] requests oral argument. While the argument in this case is straightforward, oral argument will ensure a full opportunity for Mr. Membreño to answer any factual questions and arguments to this Court.

---

[1] Edys Renan Membreño Díaz is the accurate spelling of his name and will be used throughout this brief.

# JURISDICTIONAL STATEMENT

On August 5, 2025, the district court sentenced Edys Renant Membreño Díaz for unlawful reentry after removal. (R. 23, Sent. Hrg. Tr., PageID.123).[2] The district court entered the judgment on August 5, 2025. (R. 22, Judgment, PageID.118). On September 3, 2025, the government filed a notice of appeal. (R. 24, Notice of Appeal, PageId.138.) Pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, jurisdiction is proper in this Court.

---

[2] Page numbers refer to the Page ID # in compliance with Circuit Rule 28(a)(1).

## STATEMENT OF ISSUES

Whether the district court abused its discretion at sentencing when it considered Mr. Membreño's mitigating history and personal characteristics, support letters, criminal history, current incarceration, and other relevant information – from the parties and probation – in carefully balancing and conducting an individualized application of the 18 U.S.C. § 3553(a) factors?

## STATEMENT OF THE CASE

### I.    Initiation of Case

On July 17, 2022, the United States government learned of Edys Renan Membreño Díaz's return to the United States after an immigration removal. It filed an Immigration and Customs Enforcement detainer on the same date. (R. 18, Final PSR, PageID.66.) This occurred on the same date of his arrest by Michigan authorities for a violation of state law. (R. 18, Final PSR, PageID.68.)

On September 27, 2024, over two years later, the United States Attorney's Office filed a criminal complaint against Mr. Membreño. That complaint alleged that Mr. Membreño violated 8 U.S.C. § 1326(a), unlawful reentry following removal from the United States of America. (R. 1, Complaint, PageID.1)

On January 28, 2025, the United State Attorney's Office obtained a judicially signed Petition for Habeas Corpus ad Prosequendum against Mr. Membreño. (R. 18, Final PSR, PageID.65.) Mr. Membreño at that time was in the custody of the Michigan Department of Corrections. (R. 18, Final PSR, PageID.68.) Mr. Membreño made an initial appearance on the criminal complaint on March 11, 2025. (R. 18, Final PSR, PageID.65.) He consented

to federal custody. (R. 9, Consent Order of Federal Detention Pending Trial, PageID.15.)

Mr. Membreño waived grand jury indictment and proceeded via an Information to the single count charge of 8 U.S.C. § 1326(a), unlawful reentry following removal. (R. 10, Information, PageID.16-18; R. 13, Waiver of Indictment, PageID.22-23.) On March 25, 2025, a magistrate judge arraigned him on the charging document. (R. 18, Final PSR, PageID.65.)

## II.    Change of Plea Hearing and Presentence Report

On April 30, 2025, Mr. Membreño pled guilty to the one-count charge of violating 8 U.S.C. § 1326(a), unlawful reentry following removal without a Rule 11 plea agreement with the government. (R. 18, Final PSR, PageID.65.) No increased statutory penalties applied beyond the maximum two years under 8 U.S.C. §§ 1326(b)(1), (b)(2).

A presentence investigation was ordered, and a Probation Officer with the assistance of an interpreter interviewed Mr. Membreño. (R. 18, Final PSR, PageID.72.)

*Michigan state case*: On July 17, 2022, Southfield Police Department officers arrested Mr. Membreño for sexual assault. (R. 18, Final PSR, PageID.68.) He was charged with two counts of Criminal Sexual Conduct Third Degree (CSC-3), and one count of Criminal Sexual Conduct Fourth

Degree (CSC-4). (R. 18, Final PSR, PageID.68.) During this incident, and a review of the police reports confirmed, that Mr. Membreño was under the influence of alcohol. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.100.) The CSC-3 charges required that Mr. Membreño "knew or *should have known*" the complainant mentally incapable or physically helpless. Michigan Model Criminal Jury Instructions 20.16 (emphasis added), *available at* https://perma.cc/X45M-LQBT. The complainant suffered from cerebral palsy. (R. 18, Final PSR, PageID.68.)

On September 14, 2022, Mr. Membreño waived his right to a preliminary examination and pled guilty to all three counts in the 46th Judicial District Court. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.100-101.). No counts were dismissed. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.100-101.). The case was then bound over to the 6th Circuit Court (Pontiac, Michigan) for sentencing. On October 12, 2022, a 6th Circuit Court judge imposed a sentence less than three months after his arrest: Count 1 and 2 – 6 to 15 years in custody; Count 3 – 1 to 2 years custody. (R. 18, Final PSR, PageID.68.) That sentence is with the Michigan Department of Corrections. (R. 18, Final PSR, PageID.68.)

*Applicable Sentencing Guideline calculation*: Mr. Membreño's federal count of conviction was to 8 U.S.C. § 1326(a), not to enhanced penalties

under subsections (b)(1) or (b)(2) because they did not apply, and that the count of conviction is a Class E felony. (R. 18, Final PSR, PageID.63.)

The final presentence report scored the base offense level as 8 (pursuant to U.S.S.G. § 2L1.2(a)) with an added 10 levels (pursuant to U.S.S.G. § 2L1.2(b)(3)(A)) because of Mr. Membreño's previous felony conviction with a sentence of five or more years. (R. 18, Final PSR, PageID.67.) That being the Michigan state case. The PSR indicated no other criminal history for Mr. Membreño aside from civil immigration apprehensions. (R. 18, Final PSR, PageID.68-69.) Thus, the total offense level was 18 with a criminal history category of III (all criminal history points come from the one Michigan state case). (R. 18, Final PSR, PageID.68.) After including the -3 for acceptance of responsibility, the calculated advisory sentencing guidelines suggested an imprisonment range of 24 to 30 months, though capped at 24 months because of the statutory maximum. (R. 18, Final PSR, PageID.67, 72.)

In the final presentence report, the Probation Officer did not make any recommendation as to the appropriate sentence. It did not independently find any factors that warranted the application of a departure (i.e., departure based on a policy set forth by the 2024 United States Sentencing Guideline

Manual) from the advisory sentencing guideline range. (R. 18, Final PSR, PageID.74.)

The officer summarized case information and listed the factors to be considered pursuant to 18 U.S.C. § 3553(a). Such presentation of information did "not necessarily constitute a recommendation by the probation department for a" specific sentence. (R. 18, Final PSR, PageID.74.)

Aside from a short application of information to the factors, the report identified that the Judiciary Sentencing Information database information on persons with similar offense level and criminal history category as Mr. Membreño. (R. 18, Final PSR, PageID.76.) Specifically, that for those sentenced to a term of imprisonment, the median sentence imposed was 18 months and 19 months as the average sentence. (R. 18, Final PSR, PageID.76.) Both numbers below the applicable advisory sentencing guideline range of 24 months in this case. (R. 18, Final PSR, PageID.72.)

## III.   Sentencing Memorandums

Defense counsel filed on Mr. Membreño's behalf a sentencing memorandum with exhibits spanning a total of 27 pages. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.91-117.) The memorandum expanded on preliminary information included in the presentence report of Mr. Membreño's history and characteristics. (R. 21, Defense Sentencing

Memorandum with Exhibits, PageID.92-98.) For example, the severe poverty he endured growing up in a farming community within Honduras:

> Edys' early years consisted of assisting his family in farming. He worked with his father as a child in the farms of others because the Membreño Díaz family did not own their own farmland. By working the corn, beans, and coffee farms of others, his father received pay for the areas cleaned, planted, and harvested. His father provided a small amount of the money earned to Edys so he could buy himself clothing. Most of the time, Edys declined the money so the family could buy food. That is, to buy the minimum amount of food to live on when there were days that he missed many meals.

(R. 21, Defense Sentencing Memorandum with Exhibits, PageID.93.)

Defense counsel detailed that Mr. Membreño grew up in "shack with no running water, electricity, or gas" with descriptions and support of such history through filed letters. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.92.) Similarly, describing his childhood instability as also tied to his father's abuse:

> The money earned by [Mr. Membreño's father] sometimes went misdirected to buying alcohol instead of supporting the family. As his older brother Dennis describes their father: "In his state of inebriation, he would mistreat us verbally and sometimes, physically. He would hit my mother in our presence." Ex. A – Letter from Dennis Membreño Díaz, at 003. These were "moments of panic, living intrafamilial violence accompanied by misery." Ex. A – Letter from Dennis Membreño Díaz, at 003. His mother describes that period as living with "a lot of violence from my spouse, humiliating mistreatment, terrorizing everyone with no help from the rest of the family. I didn't report him out of fear of something worse, receiving blows, but I never abandoned my young

> children when he was drunk from alcohol." Ex. A – Letter from Electeria Díaz, at 006. Edys did not have a way to escape the violence or desire to leave his mother alone. He left to play with others his age, hid, or went to work when his father was angry or inebriated.

(R. 21, Defense Sentencing Memorandum with Exhibits, PageID.94-95.) Again, with letters from others explaining that abuse. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.109-115.)

Defense counsel described why Mr. Membreño's education was cut short after six years of schooling. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.95.) And his transition to working in farming and other jobs beginning at age twelve, some jobs that required him to travel long distances. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.96.) Counsel submitted letters confirming the information. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.109-115.) He also provided economic data about extreme poverty in Honduras during Mr. Membreño's childhood. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.96-97.) And he detailed dangers for young men and women in Honduras, including that Mr. Membreño's brothers were killed in 2017. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.96.) This violence in part motivated Mr. Membreño to migrate from Honduras to the

United States. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.96.)

The memorandum acknowledged that Mr. Membreño was arrested promptly by immigration officials and underwent expedited removal (i.e., same day removal) several times until he entered the United States in 2021. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.97.) Meaning, the federal government decided then that no criminal consequences for his actions were warranted. (R. 18, Final PSR, PageID.68-69.) An exhibit also confirmed that he worked in México after those removals. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.113-114.)

During his time in the United States, Mr. Membreño worked in construction six days per week earning about $1,000 that mostly went as remittances to his parents and his brother:

> The remittances provided "better conditions and to get ahead with a decent life, and to help us financially to obtain food and medications when they are needed, to control blood pressure. Mainly my parents, since to tell the truth we are of low income." Ex. A – Letter from Dennis Membreño Díaz, at 003. His mother further confirms the remittances sent: "When Edys would send me remittances, the truth is he was helping us a lot. He would send it every two weeks. My son Dennis would withdraw it and he would deliver it to us in cash." Ex. A – Letter from Electeria Díaz, at 006.

(R. 21, Defense Sentencing Memorandum with Exhibits, PageID.97-98.)

Defense counsel addressed various other areas relevant for sentencing. Such as general and specific deterrence as to Mr. Membreño, including the challenging experience for him of approximately five months while in federal custody in a county jail as a monolingual Spanish speaker. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.102-103.) Protection of the community since his detention beginning in July 2022, projected release date of July 23, 2028 (and maximum discharge date of July 23, 2037), and immigration removal after. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.103-104.) He also detailed Mr. Membreño's future experience in the Bureau of Prisons for educational and vocational training along with treatment needs being minimal as a monolingual Spanish speaker, noncitizen, subject to removal, and without a U.S.-high school diploma. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.104-105.) And his plans to remain in Honduras after removal. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.98.)

In terms of the Michigan state case, Mr. Membreño reaffirmed his responsibility for his actions. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.100-101.) Those actions occurred when he was under the influence of alcohol. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.100.) The memorandum described how "he pled guilty less than two

months after his arrest to all three counts; the state court held no preliminary examination, no counts were dismissed, and no plea negotiations ensued before he pled guilty. A state court judge imposed a sentence less than three months" after his arrest. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.100-101.) It also corrected the record of the government's misstatements in their sentencing memorandum that Mr. Membreño's state case was that of assaults occurring over two separate days. (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.100 *compare with* R. 20, Government Sentencing Memorandum, PageID.84.) It was only one event. (R. 18, Final PSR, PageID.68.)

Mr. Membreño requested that the district court sentence him to no more than 19 months concurrent with the state sentence he was serving as allowed under U.S.S.G. § 5G1.3(d). (R. 21, Defense Sentencing Memorandum with Exhibits, PageID.92, 106.)

Government counsel filed a short sentencing memorandum. (R. 20, Government Sentencing Memorandum, PageID.82-90.) It noted that Mr. Membreño's immigration history included six prior removals beginning in 2019, that he was processed for expedited removal during the first removal, and that five removals occurred under Title 42. (R. 20, Government Sentencing Memorandum, PageID.83.) It described how Mr. Membreño's

state conviction increased his base offense level by ten levels and criminal history category from I to III, thus capping the advisory sentencing guidelines at 24 months per the statute. (R. 20, Government Sentencing Memorandum, PageID.84.) It briefly described the offense conduct – though some of it incorrectly – in the Michigan state case. (R. 20, Government Sentencing Memorandum, PageID.83.) Then it requested that the district court impose a 24-month sentence consecutive to the current Michigan Department of Corrections sentence Mr. Membreño is serving with no term of supervise release to follow. (R. 20, Government Sentencing Memorandum, PageID.82.) No exhibits were filed by the government to its memorandum.

## IV. Sentencing

Sentencing occurred on August 5, 2025. The trial judge asked whether the parties reviewed the final presentence report and if there were any remaining changes, corrections, or anything else related to the report. (R. 23, Transcript of Sentencing Hearing, PageID.126-127.) Neither party requested changes nor were there any legal objections to the sentencing guidelines as calculated. (R. 23, Transcript of Sentencing Hearing, PageID.127.)

The court noted that, as in other cases, this case did not have information on who Mr. Membreño's actual employer was in the United

States. (R. 23, Transcript of Sentencing Hearing, PageID.127.) The court did not state that Mr. Membreño refused to provide information about his employer. Moreover, the court noted that, as in other cases, there was no communication by the Probation Office with persons in Honduras to confirm Mr. Membreño's history, as probation officers do not call people outside the United States to confirm information. (R. 23, Transcript of Sentencing Hearing, PageID.127.) It did acknowledge that letters from persons in Honduras were submitted as exhibits for sentencing. (R. 23, Transcript of Sentencing Hearing, PageID.127.)

*Government allocution*: Government counsel spoke briefly. (R. 23, Transcript of Sentencing Hearing, PageID.127.) She emphasized Mr. Membreño's prior unlawful entries into the United States and removals, that there was a vulnerable victim from the Michigan state case, and that a 24-month consecutive sentence would exert punishment for unlawful reentry separate from the state sentence. (R. 23, Transcript of Sentencing Hearing, PageID.128-129.)

*Defense allocution*: Defense counsel during his allocution focused on several areas. First, he acknowledged the gravity of the Michigan state case, but argued that the conduct was already accounted for when calculating the sentencing guidelines (both criminal history and offense level calculation).

(R. 23, Transcript of Sentencing Hearing, PageID.129-130.) Second, he emphasized Mr. Membreño's time in federal custody and experience in a county jail (i.e., Sanilac County Jail) for the federal hold and in control by the U.S. Marshal. (R. 23, Transcript of Sentencing Hearing, PageID.129.) Third, he pointed out his continued detention for years until his release from state custody. (R. 23, Transcript of Sentencing Hearing, PageID.129.) Fourth, he noted what his projected guidelines would be in the future if arrested again for unlawful reentry. (R. 23, Transcript of Sentencing Hearing, PageID.130.) Fifth, he highlighted Mr. Membreño's sobriety, commitment to sobriety, and family history. (R. 23, Transcript of Sentencing Hearing, PageID.130.) Last, he asked the court to sentence Mr. Membreño to a concurrent federal sentence to the state sentence. (R. 23, Transcript of Sentencing Hearing, PageID.129-131.)

Mr. Membreño also spoke at sentencing, where he affirmed his shame for the 2022 conduct, apologized to American citizens, and explained that he would advise others to not come to the United States like he did. (R. 23, Transcript of Sentencing Hearing, PageID.131-132.)

*Pronouncement of sentence*: From the onset, the district court recognized that its role was to fashion a sentence that achieved the goals of federal sentencing but not higher than that when determining the

appropriate sentence. (R. 23, Transcript of Sentencing Hearing, PageID.132.) It then analyzed the 18 U.S.C. § 3553(a) factors.

The court first looked at the nature of the crime in this case and Mr. Membreño's personal history and characteristics. It acknowledged the Michigan state crime: "[t]he crime that you committed that led to your arrest and I agree that that's a horrible crime, I think you do as well and you've expressed -- you've taken responsibility for that, expressed remorse for that and you are serving a lengthy state sentence as punishment for that conduct." (R. 23, Transcript of Sentencing Hearing, PageID.132.) Then she described this conviction as one of unlawful reentry and not one that is a violent crime, or of stealing money from state or federal programs. (R. 23, Transcript of Sentencing Hearing, PageID.132.)

In terms of Mr. Membreño's history and characteristics, it considered the information from the government, defense, and probation. It discussed information provided through the defense sentencing memorandum and letters from family members describing that he "grew up in extraordinary poverty, without plumbing and without food on many occasions and we know from scientific research that when people are hungry, they simply can't make good choices and you suffered terribly at the hands of your father." (R. 23, Transcript of Sentencing Hearing, PageID.132-133.) The court noted

that he lost two siblings to violence in Honduras, that his mother depends on him for resources, and that he had shown commendable devotion to his parents. (R. 23, Transcript of Sentencing Hearing, PageID.133.) The court briefly commended him for working in the United States. (R. 23, Transcript of Sentencing Hearing, PageID.133.)

The court then moved on to analyzing other sentencing factors. In terms of deterrence, it determined that in comparison to others, it found this case unique, that Mr. Membreño expressed that he would be an "ambassador for living to our immigration restrictions," and credited his statement that he would "discourage [others] from coming [to the U.S.] without documentation." (R. 23, Transcript of Sentencing Hearing, PageID.134.) Thus, this was "one of the only cases" where it believed deterrence "will be achieved" when comparing to other similar unlawful reentry cases. (R. 23, Transcript of Sentencing Hearing, PageID.134.)

In terms of the need for educational or vocational training, medical care, or other correctional treatment, it found that while substance abuse treatment "would be ideal" for him, that is not provided in the county jail during his time in federal custody and he would continue serving his sentence at the Michigan Department of Corrections. (R. 23, Transcript of Sentencing Hearing, PageID.134.)

As to unwarranted disparities, the court explained that it looks at other defendants with similar records found guilty of similar conduct. (R. 23, Transcript of Sentencing Hearing, PageID.134.) It strived to avoid unwarranted sentencing disparities, but it also looked at the individual charged "as an individual human being and not just as a data point on a chart." (R. 23, Transcript of Sentencing Hearing, PageID.134-135.) The court further observed how Mr. Membreño took responsibility and how he handled both the state sexual assault and this unlawful reentry cases. (R. 23, Transcript of Sentencing Hearing, PageID.135.) It also confirmed that an ICE detainer was still in place and removal would occur after completing his sentence. (R. 23, Transcript of Sentencing Hearing, PageID.135-136.)

The court then imposed a time served sentence and ordered that its sentence be concurrent with Mr. Membreño's Michigan state sentence. (R. 23, Transcript of Sentencing Hearing, PageID.135.)

As to the sentence imposed, the court asked the parties if there were any objections. (R. 23, Transcript of Sentencing Hearing, PageID.136.) Defense counsel did not object to the imposed sentence. (R. 23, Transcript of Sentencing Hearing, PageID.136.) Government counsel objected generally to the sentence "as being an unreasonable departure from the guideline range." (R. 23, Transcript of Sentencing Hearing, PageID.136.) The government did

not state that the objection to the sentence was "on both procedural and substantive grounds." *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004). Nor did it elucidate further on the nature of its general objection. (R. 23, Transcript of Sentencing Hearing, PageID.136.)

The judgment lodged to the case docket on August 5, 2025. (R. 22, Judgment, PageID.118-122.)

Mr. Membreño is currently in custody at the Michigan Department of Corrections.

*Appeal notice*: On September 3, 2025, the government filed a notice of appeal. (R. 24, Notice of Appeal, PageID.138.)

## SUMMARY OF THE ARGUMENT

The district court did not abuse its discretion at sentencing and reversal is not required.

While not preserving a procedural reasonableness objection to the sentence imposed by the district court, the government attempts to shoehorn a procedural reasonableness argument into the substantive reasonableness framework. At sentencing, the government was invited to raise any procedural or technical issues with the imposition of the sentence, to explain its objection and allow the district court to correct any issues with the "time served" and "concurrent" sentence to the Michigan state case "on the spot" that it now raises as an impossibility. It did not do so, and its argument now does not support an abuse of discretion finding.

The district court fulfilled the goals of sentencing in accounting for the 18 U.S.C. §§ 3553(a)(1) and (a)(2) factors. It correctly assessed the nature and circumstances of the offense of conviction. Mr. Membreño's previous civil removals do not automatically elevate the conduct as an "aggravating factor" for a "harsher sentence." This Court also never imposed a requirement that a sentencing court must account on the record any harm to a victim from a case that is not before the district court for sentencing, and the government's argument otherwise is based on an incorrect reading of this

Court's caselaw. Even so, the district court here plainly acknowledged the Michigan state crime and did not dismiss the gravity of the sexual assault in any shape or form. The court had before it a range of information from various sources along with seeing, observing, and hearing from Mr. Membreño through court proceedings. It was in the best position to assess and determine deterrence, respect for the law, and the just punishment related to the offense. It explicitly discussed its findings.

The district court acknowledged and addressed sentencing disparities. Counter to the government's view that Mr. Membreño should be viewed through the narrow prism as someone that "is no different than most of those similar offenders" within the national statistics, the district court provided its reasoning for considering disparities and explicitly considered the § 3553(a) factors when it engaged in an individualized assessment for sentencing as it is statutorily required.

The government's arguments that the district court imposed a substantively unreasonable sentence is, in short, a view that the district court should have balanced the § 3553(a) factors differently, not one that results in a finding that it abused its discretion.

**ARGUMENT**

## I.   Standard of Review

The district court did not abuse its discretion in imposing sentence upon Mr. Membreño for unlawful reentry after removal. This Court reviews sentencing decisions "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007); *United States v. Adams*, 873 F.3d 512, 520 (6th Cir. 2017).

An argument that a sentence is "substantively unreasonable is a claim that a sentence is too long (if a defendant appeals) or too short (if the government appeals)." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). Whether a "court placed too much weight on some of the [18 U.S.C.] § 3553(a) factors and too little on others in sentencing the individual." *Rayyan*, 885 F.3d at 442.

A sentence is only substantively unreasonable "if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Price*, 901 F.3d 746, 749 (6th Cir. 2018) (quotation omitted). The weighing of the 3553(a) factors "is a matter of reasoned discretion, not math." *Rayyan*, 885 F.3d at 442; *Gall*, 552 U.S. at 51. A party challenging a sentence "must surmount a

23

high bar to succeed on a substantive-reasonableness challenge." *United States v. Thomas*, 933 F.3d 605, 612-613 (6th Cir. 2019).

For a sentence outside the advisory sentencing guideline range, the reviewing "court may not apply a presumption of unreasonableness." *Gall*, 552 U.S. at 51. Review "is a highly deferential review of a district court's sentencing decisions." *Rayyan*, 885 F.3d at 442. That is, it "must give due deference to the district court's decision that the § 3553(a) factors justify the variance." *Gall*, 552 U.S. at 51. "The fact that the [reviewing] court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

Review is to examine "whether the sentence is reasonable," not whether the reviewing court would have imposed the same sentence in the first instance. *United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013) (citing *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006)). In cases "that fall outside the Guidelines' heartland, the district court's decision to deviate from the advisory range is entitled to the greatest respect[.]" *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020) (omitting quotations) (citing *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009)).

The government's three substantive reasonableness arguments — and its attempt to shoehorn a procedural reasonableness argument into a substantive reasonableness — are insufficient to require reversal.

## II. Government counsel failed to meet its charge to clearly articulate an objection and identify any errors for the district court to correct "on the spot" regarding the imposed sentence.

At sentencing, parties are required to "alert a district court to potential errors through timely objection." *United States v. Jett*, 154 F.4th 459, 471 (6th Cir. 2025). This is explained as "[r]equiring clear articulation of any objection and on the grounds therefor . . . aid[s] the district court in correcting any error on the spot." *Jett*, 154 F.4th at 471 (cleaned up) (citing to *United States v. Bostic*, 371 F.3d 865, 873 (6th Cir. 2004)). That's so because a timely objection could then "avert the need for appellate intervention altogether" or better assist in an appellate review. *Jett*, 154 F.4th at 471.

The government leads its argument by insisting that the sentence imposed by the district court of "'time served' sentence entails no time in federal custody" because Mr. Membreño was "produced in federal court pursuant to a writ of habeas corpus ad prosequendum," and that supports a finding of substantive unreasonableness. (Gov. Br., 22.) While not preserving a procedural reasonableness objection to the sentence imposed

by the district court, the government also does not specifically argue that it is procedurally unreasonable in its brief. (Gov. Br., 14-16.) Yet it attempts to shoehorn that procedural issue as one of substantive unreasonableness. In other words, although the government frames this argument as a challenge to the sentence's substantive reasonableness, the argument is more properly characterized as procedural rather than substantive. *See United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). More so when it argues that the imposed sentence is both "unreasonable" and "impossible." (Gov. Br., 23.)

When the district court imposed the sentence, it inquired as to whether the parties objected to the such sentence. It was the opportunity for the parties to clearly articulate an objection to allow the court to correct any issues at that moment. *Jett*, 154 F.4th at 471. While defense counsel did not object, government counsel objected generally to the sentence "as being an unreasonable departure from the guideline range." (R. 23, Transcript of Sentencing Hearing, PageID.136.) What it did not do is state that the objection to the sentence was "on both procedural and substantive grounds" per *Bostic. Bostic*, 371 F.3d at 865. Nor did it explain the nature of its general objection aside from the phrase of the sentence being an "unreasonable departure." (R. 23, Transcript of Sentencing Hearing, PageID.136.) To the finer point at hand, this was the opportunity for the government to raise any

procedural or technical issues with the imposition of the sentence. To explain its objection and allow the district court to correct any issues with the "time served" and "concurrent" sentence to the Michigan state case "on the spot" that it now raises. (R. 23, Transcript of Sentencing Hearing, PageID.136.) Specifically, that the "time served" sentence meant "no time in federal custody" because he was on "loan" from "state custody" and "impossible." (Gov. Br., 22-23.)

It is correct that Mr. Membreño was in (1) federal custody pursuant to the signed Petition for Habeas Corpus ad Prosequendum from the state facility, (2) that he made an initial appearance on the criminal complaint in federal court, and (3) consented to federal custody. (R. 18, Final PSR, PageID.65.; R. 9, Consent Order of Federal Detention Pending Trial, PageID.15.) For all practical purposes he *was* in federal custody or else how would the U.S. Marshal have power or control over his facility placement and movement. That is not a matter of primary or secondary jurisdiction at sentencing, nor was it raised as an issue of jurisdiction or primary custody. And it is not up to the district court to decipher or determine how much time or what time will be credited to the federal sentence, even in a "time served" and "concurrent" sentence. It is the responsibility of the Federal Bureau of Prisons to calculate any sentencing credits that a federal prisoner may

receive or is entitled for any time spent in official custody. *United States v. Wilson*, 503 U.S. 329, 334-337 (1992); 28 C.F.R. § 0.96 (delegation to the Bureau of Prisons the matter of federal sentence computation for prisoners). It falls on the BOP, not the district court, to effectuate and determine when a sentence "commences" and effect the method in which a prisoner receives credit for a time served sentence. *See United States v. Wells*, 473 F.3d 640, 645 (6th Cir. 2007). And that squarely fell on the government to raise this as an issue at sentencing based on its now argument.

In sum, the issue raised by the government is not one that goes to the substantive reasonableness of the sentence. It acknowledged that, even if the district court imposed a specific time and concurrent sentence, it would still "maintain that the only reasonable outcome . . . is a consecutive, guideline sentence." (Gov. Br., 23.) It is about procedural reasonableness, and one that was not raised before the district court for any form of consideration or potential correction if substantiated then. This Court should find that this argument is insufficient to prove an abuse of discretion by the district court.

## III. The district court acted within its discretion in weighing the sentencing factors.

The government takes issue with the district court's consideration of 18 U.S.C. §§ 3553(a)(1) and (a)(2). (Gov. Br., 23-32.) These arguments from the government do not further its cause in asking this Court to find that the

district court abused its discretion in finding the sentence substantively unreasonable.

*First*: The government argues that the district court gave "too little weight" to nature of the offense of unlawful reentry and his history and characteristics. (Gov. Br., 23.)

It is correct that Mr. Membreño's prior six removals were not assessed criminal history points as the government writes. (*See* Gov. Br., 24.) The government then turns those prior six removals and lack of scored criminal history points as an automatic "aggravating factor." (Gov. Br., 24.) But they simply do not score because they are not criminal convictions. Those are civil actions. Removals that occurred under expedited removal and Title 42, meaning that he was removed from the United States the same day of being found in the United States of America near the México border. The government concedes as much. (R. 20, Government Sentencing Memorandum, PageID.83; Gov. Br., 11.) The lack of criminal prosecution then was a federal law enforcement decision, not attributed to Mr. Membreño. It takes nothing from the district court's assessment of nature and circumstances of the offense conduct here, that is a conviction for unlawful reentry after removal, which is not a crime of violence. (R. 23, Transcript of Sentencing Hearing, PageID.132.)

The case summaries that the government provides for its view that Mr. Membreño's removals should have been considered an "aggravating factor" for a "harsher sentence" are bereft of critical information. (Gov. Br., 24-27.) Information that explains why the sentencing courts varied in those instances. For example,

- *United States v. Lopez-Galvez*, 429 F. App'x 567, 568 (6th Cir. 2011): The defendant there had five criminal cases (four convictions) in between his first removal and subsequent removals until his prosecution for unlawful reentry.

- *United States v. Tristan-Madrigal*, 601 F.3d 629, 631 (6th Cir. 2010): The defendant there had numerous encounters with law enforcement, including criminal convictions between his first removal and subsequent removals, a prosecution for unlawful reentry, enhanced penalties under 8 U.S.C § 1326(b)(1), and a criminal history category of IV.

- *United States v. McKenzie*, 769 Fed. App'x 333, 334-335 (6th Cir. 2007): The defendant there pled guilty to one count of unlawful reentry after removal under 8 U.S.C. § 1326(a) and one count of possession of a firearm as a noncitizen under 18 U.S.C. § 922(g)(5). The district court there imposed a variance based on the fact that the defendant fled from the police, had a loaded firearm at his side, lacked credibility, did not cooperate with police when arrested, and reports of a shot fired in the offense of conviction, along with a previous drug trafficking conviction before a previous removal and false claims to U.S. citizenship.

- *United States v. Perez-Rodriguez*, 960 F.3d 748, 755-756 (6th Cir. 2020): The cases collected where upward variances were affirmed included one person with three driving under the influence convictions, one person with fourteen prior criminal convictions, and one person with fifteen prior criminal conditions.

- *United States v. Porras-Chinchilla*, 459 Fed. App'x 553, 554 (6th Cir. 2012): The defendant there was convicted of aggravated felonies at the state level, removed from the United States; subsequently returned to the United States, convicted for unlawful reentry subsequent an aggravated felony conviction, sentenced to 46 months, removed; returned a third time, provided a false name to law enforcement, sentenced for unlawful reentry after removal after an aggravated felony.

All of the cited cases show "multiple reentries and a substantial number of crimes upon return." *Perez-Rodriguez*, 960 F.3d at 756. That is not present in this case.

Mr. Membreño pled guilty to and was sentenced for unlawful reentry pursuant to 8 U.S.C. § 1326(a), meaning that no enhanced penalties applied under subsections (b)(1) or (b)(2). A Class E felony conviction. (R. 18, Final PSR, PageID.63.) The government learned of Mr. Membreño's presence in the United States after an immigration removal on July 17, 2022, on the same date for his arrest in the Michigan for a violation of state law. (R. 18, Final PSR, PageID.68.) There were no multiple removals with numerous crimes occurring each time over the course of years. The conduct that this federal offense involves is his return, not a reentry after removal subsequent an aggravated felony conviction.

Of course, the Michigan state conviction is part of the sentencing universe and was adequately accounted for at sentencing. The sexual assault case resulted in Mr. Membreño promptly waiving his right to a preliminary

examination, pleading guilty to all three counts, and receiving a lengthy state sentence. (R. 18, Final PSR, PageID.68.) Defense counsel explained in more nuanced form the incident, provided more information on what Mr. Membreño learned after his arrest, and emphasized Mr. Membreño's repeated acceptance for his conduct and its gravity. That case conviction in of itself does not automatically "place[] him in a category" that "call[s] for a harsher sentence." (Gov. Br., 27.) And as discussed above, the government's cited cases do not stand for that proposition.

The government stresses that this district court's failure "to account for harm to victims," "discuss or consider the significant harm" to the woman Mr. Membreño sexually assaulted amounts to finding the sentence is substantively unreasonable. (Gov. Br., 24, 28.) It cites *United States v. Boucher,* 937 F.3d 702 (6th Cir. 2019), for that proposition but misconstrues it.

In *Boucher*, the defendant attacked a person, broke the victim's six ribs, and caused long term damage to the victim's lungs that in turned caused several bouts with pneumonia, thus violating 18 U.S.C. § 351(e) (assaulting a member of Congress). *Boucher*, 937 F.3d at 704-705. It was the summary reference to the seriousness of the harm of the federal offense tied to *that* victim (not victim(s) of other cases) without tying the imposed sentence that

partially supported a finding of substantive unreasonableness and vacatur of the sentence. *Boucher*, 937 F.3d at 709-710. This Court never imposed a requirement that a sentencing court must account on the record any harm to a victim from a case that is not before the district court for sentencing. In fact, the district court at sentencing plainly acknowledged the Michigan state crime: "[t]he crime that you committed that led to your arrest and I agree that that's a horrible crime, I think you do as well and you've expressed – you've taken responsibility for that, expressed remorse for that and you are serving a lengthy state sentence as punishment for that conduct." (R. 23, Transcript of Sentencing Hearing, PageID.132.) It did not dismiss the gravity of the sexual assault in any shape or form – it considered the significant harm and convictions.

Nor did the district court "applaud him for repeatedly entering the United States illegally" and use his unlawful reentry as a mitigating factor. (Gov. Br., 25.) What it did is recognize his productivity by working in the United States in construction before his arrest. That was less than three lines of the sentencing transcript. (R. 23, Transcript of Sentencing Hearing, PageID.133.) It was an acknowledgement tied to losing two siblings to violence in Honduras, his mother's dependence on him for resources, and the financial support to his family. (R. 23, Transcript of Sentencing Hearing,

PageID.133.) The government confusingly argues that the district court never asked Mr. Membreño "if he paid taxes on those wages," and that there is no information on the name of his employer from 2021 and 2022.[3] (Gov. Br., 26, 13.) This additional quibbling does not carry the ball forward to a finding of substantive unreasonableness as to the sentence.

The district court adequately considered and provided sufficient weight to Mr. Membreño's unlawful reentry offense and his history and characteristics. It did not abuse its discretion.

*Second*: Moving to the next set of argument, the government takes issue with the district court's sentencing as not promoting respect for the law, afford adequate deterrence, or enacting just punishment for this offense. (Gov. Br., 29.)

From the outset, this district court had before it a range of information from various sources along with seeing, observing, and hearing from

---

[3]    The government takes issue this district judge because of decisions she sometimes takes regarding the creation of presentence reports, as it once again sets out in footnote two. (Gov. Br., 26.) That is of no import to this case as there was a presentence report.

The district court's initial remarks at the beginning of sentencing in this case addressed the lack of confirmed information about an employer and confirmation of information from people overseas – by noting that presentence reports for unlawful reentry cases are typically bereft of those pieces of information (e.g., employers, collateral interviews, other confirmed information from sources).

Mr. Membreño through court proceedings. That is why district courts have broad discretion in engaging in the difficult task for sentencing individuals. *See United States v. Poynter*, 495 F.3d 349, 351 (6th Cir. 2007) ("While [district court's] sentence individuals face to face for a living, [this Court] review[s] transcripts. No one sentences transcripts."). In doing so, they are the best at making assessments and determinations on deterrence, respect for the law, and what just punishment is related to the offense. That is why the district court could make such an assessment and find that in comparison to others, this case was unique, that Mr. Membreño expressed that he understood the immigration restrictions and criminal consequences. The court also credited his statement that he would "discourage [others] from coming [to the U.S.] without documentation." (R. 23, Transcript of Sentencing Hearing, PageID.134.) It was "one of the only cases" where it believed deterrence "will be achieved" when compared to other similar unlawful reentry cases. (R. 23, Transcript of Sentencing Hearing, PageID.134.)

There is a discounting of Mr. Membreño's allocution and information provided through the sentencing memorandum regarding deterrence: "It is hard to understand why anyone would credit" Mr. Membreño's statement as this time being different from previous removals. (Gov. Br., 29-30.) He gets

no "free pass" for this reentry conviction as the government argues. (Gov. Br., 32.) Those previous removals had no criminal consequences and did not result in any effect to his criminal history. This one does, regardless of the sentence.

If "Congress or the Sentencing Commission had a concern" with the crime – here, a first-time unlawful reentry conviction – requiring a substantial sentence to promote deterrence, "they would presumably have prescribed harsher sanctions." *Perez-Rodriguez*, 960 F.3d at 757 (omitting quotations) (citing *United States v. Ortega-Rogel*, 281 F. App'x 471, 474-475 (6th Cir. 2008)). "And regarding the need for deterrence and to protec[t] the public from future crimes, 18 U.S.C. § 3553(a)(2)(C), the fact that [Mr. Membreño] will be deported does that to some extent." *Perez-Rodriguez*, 960 F.3d at 757 (omitting quotations) (citing *Ortega-Rogel*, 281 F. App'x at 475). A removal that is expected to occur at some point between July 23, 2028 and July 23, 2037, when he completes his ongoing state sentence.

The district court fulfilled the goals of sentencing in accounting for 18 U.S.C. §§ 3553(a)(1) and (a)(2). It did not abuse its discretion.

## IV.  The district court did address sentencing disparity.

The government presses that the district court's variance "created an unwanted sentencing disparity" as further support that the court abused its discretion. (Gov. Br., 32-34.) Specifically, it argues that the district court did not actually consider or provide "compelling reasons" for a disparity between national statistics and the sentence imposed in this case. (Gov. Br., 33.) This is incorrect. In addressing sentencing disparities at the sentencing hearing, the district court acknowledged this factor. The court explained that it looked at other defendants with similar records found guilty of the same violation. (R. 23, Transcript of Sentencing Hearing, PageID.134.) It also reviewed the presentence report.

The presentence report provided to the parties and the district court substantial data on national statistics. Such report identified that the Judiciary Sentencing Information database information on persons with similar offense level and criminal history category as Mr. Membreño. (R. 18, Final PSR, PageID.76.) It set out that for those sentenced to a term of imprisonment, the median sentence imposed was 18 months and 19 months as the average sentence. (R. 18, Final PSR, PageID.76.) Both numbers below the applicable advisory sentencing guideline range of 24 months in this case. (R. 18, Final PSR, PageID.72.)

Contrary to the government's misstatement that the Probation Office in that presentence report "recommended a guideline sentence of 24 months," the Probation Office did not make any recommendation on the record as to the appropriate sentence. (Gov. Br., 14.) It merely stated that it did not independently find any factors that warranted the application of a departure (i.e., departure based on a policy set forth by the 2024 United States Sentencing Guideline Manual) from the advisory sentencing guideline range. (R. 18, Final PSR, PageID.74.) Similarly, that the information and factors to be considered, including national statistics, did "not necessarily constitute a recommendation by the probation department for a" specific sentence. (R. 18, Final PSR, PageID.74.)

The district court further explained that it strived to avoid unwarranted sentencing disparities, but it is also looked at the individual charged "as an individual human being and not just as a data point on a chart." (R. 23, Transcript of Sentencing Hearing, PageID.134-135.) This is counter to the government's view that Mr. Membreño should be viewed through the narrow prism as someone that "is no different than most of those similar offenders" within the national statistics. (Gov. Br., 33.) But this Court makes clear that the district court was correct: when a district court calculates the sentencing guideline correctly, as done here, "it has necessarily taken into account the

need to avoid unwarranted sentence disparities, viewed nationally." *United States v. Hymes*, 19 F.4th 928, 935 (6th Cir. 2021) (cleaned up).

As the Supreme Court instructs in *Gall*, "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines Ranges." *Gall*, 552 U.S. at 54. When that occurs, the district court is not required "to consult the Sentencing Commission's collected data before issuing a sentence." *Hymes*, 19 F.4th at 935; *United States v. Axline*, 93 F.4th 1002, 1013 (6th Cir. 2024) (affirming substantive reasonableness of sentence even when a party directs the district court to sentencing data, that is so because a district court is not required to consider national sentencing statistics); *United States v. Hills*, 27 F.4th 1155, 1201 (6th Cir. 2022) ("having correctly calculated and carefully reviewed the Guidelines range," the sentencing court thereby "necessarily gave significant weight and consideration to the need to avoid unwarranted disparities") (quoting *Gall*, 552 U.S. at 54)). Nor is a district court required to provide "compelling reasons" to an "unexplained nationwide disparity" tied to the statistics. *Hymes*, 19 F.4th at 936 ("expressly reject[ed] imposing such a requirement on district courts"); *United States v. Erker*, F.4th 966, 979 (6th Cir. 2025) ("*Hymes* rejected a requirement to consult sentencing statistics as

a 'loose approach' that would elevate the Commission's statistical date over the text of the Guidelines themselves." (omitting citation).)

Here, the district court provided its reasoning for considering disparities and its analysis of the factors and information regarding that factor in sentencing Mr. Membreño. (R. 23, Transcript of Sentencing Hearing, PageID.135-136.) The court "did not 'simply select' what it viewed as 'an appropriate sentence,' . . . but rather explicitly considered many § 3553(a) factors." *See United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006) (quoting *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)).

Globally, the government's arguments that the district court imposed a substantively unreasonable sentence "ultimately boils down to an assertion that the district court should have balanced the § 3553(a) factors differently, which is simply beyond the scope of [the court's] appellate review." *United States v. Frei*, 995 F.3d 561, 567-568 (6th Cir. 2021) (cleaned up) (quoting *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008)). "Reasoned judgments about the appropriate length of a sentence are largely for trial courts, not appellate courts." *United States v. Johnson*, 934 F.3d 498, 502 (6th Cir. 2019). Here, the government has not shown that the sentence

imposed is substantively unreasonable requiring reversal of the district court.

## Conclusion

This Court should affirm Mr. Membreño's sentence.

Respectfully submitted,

/s/Fabián Rentería
Fabián Rentería
Counsel for Edys Renan Membreño Díaz
FEDERAL COMMUNITY DEFENDER
613 Abbott Street, Suite 500
Detroit, MI 48226
P: 313.463.6143
E: fabian_renteria_franco@fd.org

Dated: December 3, 2025

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains fewer than 13,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). The brief contains no more than 8150 words, which was calculated using the word count function of the word processing system used to prepare the document.

<u>s/ Fabián Rentería</u>
Fabián Rentería
Counsel for Edys Renan Membreño Díaz

Dated: December 3, 2025

**CERTIFICATE OF SERVICE**

I certify that on December 3, 2025, I electronically filed

- **Appellee's Response Brief**

with the Clerk of the United States Court of Appeals for the Sixth Circuit Court using the CM/ECF document filing system, which should send notification to opposing counsel of record in this case.

s/ Fabián Rentería
Fabián Rentería
Counsel for Edys Renan Membreño Díaz

Dated: December 3, 2025

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Mr. Membreño designates the following filings in the United States District Court for the Eastern District of Michigan case number 25-cr-20164 record as relevant documents:

| Record Number | Description | Page ID Range |
|---|---|---|
| 1 | Complaint | 1-4 |
| 9 | Consent Order of Federal Detention Pending Trial | 15 |
| 10 | Information | 16-18 |
| 13 | Waiver of Indictment | 22-23 |
| 18 | Final Presentence Report | 62-77 |
| 20 | Government Sentencing Memorandum | 82-90 |
| 21 | Defense Sentencing Memorandum with Exhibits | 91-117 |
| 22 | Judgment | 118-122 |
| 23 | Transcript of Sentencing Hearing (8/5/2025) | 123-137 |
| 24 | Government Notice of Appeal | 138 |